IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CHESAPEAKE APPALACHIA, LLC, and
CHESAPEAKE OPERATING, LLC,

        Plaintiffs,

v.                        //    Civil Action No. 1:14CV159
                                       (Judge Keeley)


DELORIS SUPPA, and
CHARLES BUNNER,

        Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 5] AND DENYING
DEFENDANTS' MOTION PARTIAL SUMMARY JUDGMENT [DKT. NO. 36]**

Pending before the Court are cross-motions for partial summary judgment, in which the parties seek a ruling on whether, in this case, class arbitrability is a question for the Court or for an arbitrator. For the reasons that follow, the Court **GRANTS** the motion of the plaintiffs, Chesapeake Appalachia, LLC and Chesapeake Operating, LLC (collectively, "Chesapeake"), and **DENIES** the motion of the defendants, Deloris Suppa and Charles Bunner (collectively, the "Defendants").

**I.**

On June 15, 2011, each of the Defendants, who are joint owners of the subject mineral rights, entered into separate leases with Chesapeake that allowed Chesapeake to drill for, collect, and produce their oil and gas. In addition to lump sum bonus payments,

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

the Defendants were to receive royalty payments equal to one-eighth of Chesapeake's gross proceeds on the gas produced, less its post-production costs incurred between the wellhead and the point of sale. Importantly, the leases provided that:

> In the event of a disagreement between Lessor and Lessee concerning this Lease or the associated Order of Payment, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive remedy and cover all disputes, including but not limited to, the formation, execution, validity and performance of the Lease and Order of Payment. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

(Dkt. No. 36-5 at 6; Dkt. No. 36-6 at 4).

In August 2014, the Defendants brought a putative classwide arbitration action against Chesapeake, alleging that it had artificially inflated its production costs, thereby resulting in reduced royalty payments. The class was defined as "All West Virginia lessors having oil and gas leases in which Chesapeake Appalachia, LLC was a party during the period August 3, 2010 through the present and has made deductions from the lessor's royalty payments." The Defendants asserted claims for breach of contract, unjust enrichment, and conversion.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
## DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

A month after the Defendants initiated the arbitration proceeding, Chesapeake filed an action in this Court seeking a declaratory judgment (1) that "the Court, not arbitrator(s), is to decide whether class arbitration is available pursuant to the [subject leases]," and (2) that "class arbitration is not available pursuant to the [subject leases]." (Dkt. No. 1 at 2). The parties then filed cross-motions for partial summary judgment as to the first of these issues. The motions are fully briefed and ripe for review. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).[1]

## II.

"Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them." Oxford Health Plans, LLC v. Sutter, __ U.S. __, __, 133 S. Ct. 2064, 2066 (2013). To be sure, Chesapeake has raised this issue in its complaint, and much of the case law discussed below bears on its outcome. At this stage, however, the parties are interested

_____

[1] Each of the two Chesapeake entities has a single member –– Chesapeake Energy Corporation –– which is incorporated and has its principal place of business in Oklahoma. The Defendants are both West Virginia citizens. The object of the underlying litigation is the subject leases, whose value, according to Chesapeake's good faith allegation, exceeds $75,000.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND**
**DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

solely in the antecedent issue: Who decides whether they have authorized class procedures -- the district judge or the arbitrator?

Although the Fourth Circuit has not decided this exact question, two other circuit courts have. See Opalinski v. Robert Half Int'l, Inc., 761 F.3d 326, 330 (3d Cir. 2014); Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 597-99 (6th Cir. 2013). According to the two-step analysis utilized by both courts, the first question is whether the availability of class arbitration falls under the category of issues generally decided by courts rather than arbitrators. If so, the court then must determine whether the presumption favoring judicial determination can be overcome by the parties' clear and unmistakable intent to submit the question to arbitration.

**A.**

Courts label issues surrounding arbitration under one of two headings: "questions of arbitrability" or "procedural questions."[2] See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Questions of arbitrability involve gateway disputes about "whether

---

[2] Some courts refer to procedural questions as "subsidiary questions." See, e.g., Reed Elsevier, 734 F.3d at 597.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND**
**DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

the parties are bound by a given arbitration clause." Id. They represent the

> narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing the parties to arbitrate a matter that they may well not have agreed to arbitrate.

Id. Importantly, "'the question of arbitrability . . . is undeniably an issue for judicial determination.'" Peabody Holding Co. v. United Mine Workers of Am., 665 F.3d 96, 102 (4th Cir. 2012) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)). That said, parties may agree to submit questions of arbitrability to an arbitrator, but their intent to do so must be clear and unmistakable. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); Peabody Holding, 665 F.3d at 102.

In contrast, procedural questions are presumptively decided by an arbitrator. See Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006). These questions "grow out of the dispute and bear on its final disposition." Howsam, 537 U.S. at 83 (internal quotation marks and citations omitted). They involve issues such as "waiver, delay, . . . notice, laches, estoppel, and other conditions

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.     1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

precedent to an obligation to arbitrate." Id. (quotation marks and citations omitted).

In 2003, the Supreme Court of the United States addressed whether the question of "who decides" the availability of class arbitration is an issue of arbitrability or procedure. In Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 448 (2003), a commercial lender and its customers had entered into agreements, each of which contained the following provision:

> ARBITRATION –- All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract . . . shall be resolved by binding arbitration . . . . The parties agree and understand that the arbitrator shall have all powers provided by the law and the contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief.

When the borrowers learned that their lender had failed to provide them with legally required forms, they filed suit in South Carolina state court and sought to certify their claims as a class action. Id. at 448-49. In response, the lender-defendant sought to compel arbitration pursuant to the agreements. Id. at 449.

The state trial court granted both motions, certifying the class and ordering arbitration. Id. The arbitrator administered the case as a class action, and ultimately awarded damages to the

class. Id. After the trial court affirmed the award, the lender-defendant appealed the decision, arguing in part that the agreements did not provide for class arbitration proceedings. Id. The South Carolina Supreme Court determined that the contracts' silence with respect to class arbitration implicitly authorized it. Id. at 450. The Supreme Court of the United States then granted certiorari to consider "whether that holding is consistent with the Federal Arbitration Act." Id.

The Court's decision, however, never answered that question. Rather, a plurality of four Justices[3] joined an opinion explaining that the issue of class arbitration is not a question of arbitrability, and therefore the arbitrator, not the trial court, should have made that determination at the outset. Id. 451-54. For the sole purpose of reaching a final resolution of the case, Justice Stevens concurred in the judgment vacating the South Carolina Supreme Court's decision and remanding the case so that the arbitrator could decide whether the parties had agreed to class arbitration. Id. at 455 (Stevens, J., concurring). His reluctance

---

[3] The plurality included Justices Breyer, Scalia, Souter, and Ginsburg.

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.    1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

to do so, however, and his divergence from the plurality's

reasoning, were evident:

> The Supreme Court of South Carolina has held as a matter
> of state law that class-action arbitrations are
> permissible if not prohibited by the applicable
> arbitration agreement, and that the agreement between
> these parties is silent on the issue.  There is nothing
> in the Federal Arbitration Act that precludes either of
> these determinations by the Supreme Court of South
> Carolina.
>
> Arguably the interpretation of the parties' agreement
> should have been made in the first instance by the
> arbitrator, rather than the court.  Because the decision
> to conduct a class-action arbitration was correct as a
> matter of law, and because petitioner has merely
> challenged the merits of that decision without claiming
> that it was made by the wrong decisionmaker, there is no
> need to remand the case to correct that possible error.
>
> Accordingly, I would simply affirm the judgment of the
> Supreme Court of South Carolina.  Were I to adhere to my
> preferred disposition of the case, however, there would
> be no controlling judgment of the Court.  In order to
> avoid that outcome, . . . I concur in the judgment.

Id. at 454-55 (Stevens, J., concurring) (internal citations

omitted).

For several years, the Fourth Circuit, and district courts

within our circuit, relied on Bazzle's plurality opinion for the

proposition that class arbitrability is a procedural question, and

that "an arbitrator, rather than a judge, should determine whether

an arbitration agreement allowed for class-action arbitration

proceedings." <u>Dockser</u>, 433 F.3d at 426; <u>see also</u> <u>Davis v. ECPI</u> <u>Coll. of Tech., LC</u>, 227 Fed. App'x 250, 253 (4th Cir. 2007); <u>Pritchard Elec. Co. v. Int'l Bhd. of Elec. Workers, Local 317</u>, 306 F. Supp. 2d 603, 610 n.7 (S.D.W. Va. 2004). Other circuits viewed the issue in the same light. <u>See, e.g.</u>, <u>Marie v. Allied Home</u> <u>Mortg. Corp.</u>, 402 F.3d 1, 10 (1st Cir. 2005) ("In [<u>Bazzle</u>], the Court held that whether an arbitration agreement allowed for class arbitration was likewise an issue of contract interpretation for the arbitrator rather than the judge.").

Then, in 2010, the Supreme Court granted certiorari on the question it did not reach in <u>Bazzle</u>, namely, "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act." <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 666 (2010). Again, however, the Court declined to address the "who decides" class arbitrability question because the parties had assigned that issue to the arbitrator. <u>Id.</u> at 680. Despite this, in dicta, it limited the reach of the plurality opinion in <u>Bazzle</u>:

> When <u>Bazzle</u> reached this Court, no single rationale commanded a majority. . . . The plurality opinion decided only the ["who decides" question], concluding that the arbitrator and not a court should decide whether the contracts were indeed "silent" on the issue of class arbitration. The plurality noted that, "[i]n certain

> limited circumstances," involving "gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy," it is assumed "that the parties intended courts, not arbitrators," to make the decision.  But the plurality opined that the question whether a contract with an arbitration clause forbids class arbitration "does not fall into this narrow exception." . . .   Justice Stevens concurred in the judgment vacating and remanding because otherwise there would have been "no controlling judgment of the Court," but he did not endorse the plurality's rationale. He did not take a definitive position on the first question, stating only that "[a]rguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator." . . .   Accordingly, his analysis bypassed the ["who decides" question] noted above and rested instead on his resolution of the second and third questions [of the appropriate standard to be applied in determining class arbitration, and whether the holding below was correct].  Thus, Bazzle did not yield a majority decision on any of the three questions.

Id. at 678-79 (emphasis in original) (internal citations omitted).

It observed that the decision in Bazzle had "baffled" the parties, given their belief that "the judgment in Bazzle requires an arbitrator, not a court, to decide whether a contract permits class arbitration." Id. at 680.  "In fact," the Court emphasized, "only the plurality decided that question."  Id.

Beyond clarifying Bazzle's plurality opinion, in Stolt-Nielsen, the Court also provided important guidance concerning its view of the fundamental differences between bilateral and class arbitration.  Id. at 685-87.  For example, it observed that, in a

class proceeding, "[a]n arbitrator chosen according to an agreed-upon procedure . . . no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties." Id. at 686. This, it noted, could potentially "frustrat[e] the parties' assumptions when they agreed to arbitrate." Id. Also, under the rules of the American Arbitration Association ("AAA"), the "presumption of privacy and confidentiality" afforded to litigants in a bilateral proceeding "shall not apply" in class proceedings. Id. Moreover, the "commercial stakes" of class proceedings are substantially higher than in bilateral proceedings. Id. Ultimately, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." Id. at 687.

In Cent. W. Va. Energy, Inc. v. Bayer Cropscience, LP, 645 F.3d 267 (4th Cir. 2011), a case questioning whether an arbitration panel had the authority to rule on the validity of a coal supply agreement, the Fourth Circuit interpreted Stolt-Nielsen to hold that "the question of consent to class arbitration . . . was not a

11

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

procedural question." Id. at 274 (italics added); see also AT&T Mobility LLC v. Fisher, No. 11-2245, 2011 WL 5169349, at *3 n.4 (D. Md. Oct. 28, 2011) ("[T]he question of whether an agreement encompasses class-based arbitration is generally not considered merely procedural.") (citing Bayer Cropscience, 645 F.3d at 274-75). It further noted that "[Stolt-Nielsen] found consent to class-arbitration not to be a procedural matter because the class-action construct wreaks 'fundamental changes' on the 'nature of arbitration.'" Id. at 274-75 (citation omitted).

The decision in Bayer Cropscience is significant because earlier, in Dockser, 433 F.3d at 426-27, the Fourth Circuit had analogized the question of the number of arbitrators to the question of class arbitrability addressed in Bazzle, and the question of a time-bar to arbitrability addressed in Howsam. Those comparisons had provided a basis for the court in Dockser to apply "the presumption favoring arbitrability," and to conclude that "the question of the proper number of arbitrators is for arbitral rather than judicial decision." Dockser, 433 F.3d at 427.

In Bayer Cropscience the Fourth Circuit stated that "Stolt-Nielsen did not directly contradict Dockser," 645 F.3d at 275 n.7; nevertheless, it made a noticeable effort not to draw any

comparison to <u>Bazzle</u>.  Rather, it relied exclusively on <u>Howsam</u> to support its conclusion that the question presented was "procedural in nature."[4]  645 F.3d at 273.

In 2013, in <u>Oxford Health Plans</u>, 133 S. Ct. at 2068 n.2., the Supreme Court reiterated that <u>Bazzle</u> had not determined who decides class arbitrability.  The question presented in <u>Oxford Health Plans</u> was whether the arbitrator had exceeded his powers under the Federal Arbitration Act in finding that the parties' contract provided for class arbitration.  <u>Id.</u> at 2066.  However, as in <u>Stolt-Nielsen</u>, the parties had agreed to let the arbitrator determine who decides class arbitrability; thus, the Court had no reason to address that issue.  <u>Id.</u> at 2068 n.2.  Even so, it took the opportunity to explain that

> [w]e would face a different issue if Oxford had argued
> below that the availability of class arbitration is a so-
> called "question of arbitrability."  Those questions --
> which "include certain gateway matters, such as whether
> parties have a valid arbitration agreement at all or
> whether a concededly binding arbitration clause applies

---

[4] The decision in <u>Bayer Cropscience</u> also recognized that class arbitration is a "fundamentally different process" from bilateral arbitration.  645 F.3d at 275.  Those fundamental differences would eventually become the supporting rationale for the Sixth Circuit's decision in <u>Reed Elsevier</u>, 734 F.3d at 598, and the Third Circuit's decision in <u>Opalinski</u>, 761 F.3d at 334, both of which held that the availability of class arbitration is a question of arbitrability for judicial determination.

to a certain type of controversy" –– are presumptively for courts to decide.  A court may therefore review an arbitrator's determination of such a matter <u>de novo</u> absent "clear[] and unmistakabl[e]" evidence that the parties wanted an arbitrator to resolve the dispute. <u>Stolt-Nielsen</u> made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability.  But this case gives us no opportunity to do so because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures.  Indeed, Oxford submitted that issue to the arbitrator not once, but twice –– and the second time after <u>Stolt-Nielsen</u> <u>flagged that it might be a question of arbitrability</u>.

<u>Id.</u> (italics and alterations in original) (internal citations omitted) (emphasis added).

Following the Supreme Court's decisions in <u>Stolt-Nielsen</u> and <u>Oxford Health Plans</u>, both the Sixth and Third Circuits addressed the "who decides" question and held that it is one of arbitrability presumptively for judicial determination.  In <u>Reed Elsevier</u>, a lawyer filed a putative class arbitration action against his legal database provider, LexisNexis.  734 F.3d at 596.  In response, LexisNexis sued the lawyer in federal district court, seeking a declaration that the contract between the parties did not authorize class arbitration.  <u>Id.</u>  After the district court awarded LexisNexis summary judgment on its declaratory claim, the lawyer appealed the judgment to the Sixth Circuit, arguing in part that "an arbitrator, rather than the district court, should have decided

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

whether the [contract's] arbitration clause authorizes classwide arbitration." Id. at 596-97.

In addressing that argument, the Sixth Circuit explained that, "[a]lthough the Supreme Court's puzzle of cases on this issue is not yet complete, the Court has sorted the border pieces and filled in much of the background." Id. at 597-98. Citing Stolt-Nielsen and Oxford Health Plans, it stated that "the issue before us -- whether classwide arbitrability is presumptively for an arbitrator to decide, or presumptively for a judge -- remains an open one." Id. at 598. Further, "the [Supreme] Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one." Id.

Ultimately, the Sixth Circuit determined the issue of class arbitrability was too consequential to be classified as a "subsidiary question." Id. at 598-99. "Indeed, for several reasons, the [Supreme] Court has characterized the differences between bilateral and classwide arbitration as 'fundamental.'" Id. at 598 (citations omitted).

> First, arbitration's putative benefits -- lower costs, greater efficiency and speed, et cetera -- are much less assured with respect to classwide arbitration, giving reason to doubt the parties' mutual consent to that

15

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.    1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

procedure.    Second,  confidentiality  becomes  more
difficult in classwide arbitrations –– thus potentially
frustrating the parties' assumptions when they agreed to
arbitration.   Third, the commercial stakes of class-
action arbitration are comparable to those of class-
action litigation . . . .  And then there are the due-
process  concerns:  once  an  arbitration  is  expanded
classwide, the arbitrator's award no longer purports to
bind just the parties to a single arbitration agreement,
but adjudicates the rights of absent parties as well.

Id. (internal quotation marks, citations, and alterations omitted).

Based on these considerations, it held that "the question whether

an arbitration agreement permits classwide arbitration is a gateway

matter, which is reserved for judicial determination unless the

parties clearly and unmistakably provide otherwise."  Id. at 599

(internal quotation marks and citation omitted).

In Opalinski, the Third Circuit addressed "whether a district

court, rather than an arbitrator, should decide if an agreement to

arbitrate disputes between the parties to that agreement also

authorizes classwide arbitration."  761 F.3d at 329.  There, two

employees had filed a putative class action against their employer

in federal district court for alleged violations of the Fair Labor

Standards Act.   Id.   Pursuant to the relevant employment

agreements, the employer moved the court to compel arbitration on

an individual basis.  Id.  The court granted the motion to compel,

but reserved the decision of bilateral versus classwide arbitration

16

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.    1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

for the arbitrator. Id. The arbitrator determined that classwide arbitration was available under the employment agreements, and issued a partial award. Id. The employer then filed a motion in district court seeking to vacate the arbitrator's partial award, which the court denied. Id.

On appeal of that denial, the crux of the employer's argument before the Third Circuit was that the district court, not the arbitrator, should have decided whether classwide arbitration was available. Id. In addressing the question, the Third Circuit observed that "[t]he Supreme Court has not yet decided whether the availability of class arbitration is a 'question of arbitrability.'" Id. at 331. Then, taking note of the plurality opinion in Bazzle, it observed that "[s]ubsequent Supreme Court decisions . . . cast doubt on the Bazzle plurality's decision." Id. (citing Oxford Health Plans, 133 S. Ct. at 2069 n.2; Stolt-Nielsen, 559 U.S. at 680). Elaborating on this, the court stated:

> [W]e read the Supreme Court as characterizing the permissibility of classwide arbitration not solely as a question of procedure or contract interpretation but as a substantive gateway dispute qualitatively separate from deciding an individual quarrel. Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved. . . . The [Supreme] Court's line of post-Bazzle opinions [] indicates that, because of the fundamental differences between classwide

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.    1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

> and bilateral arbitration, and the consequences of proceeding with one rather than the other, the availability of classwide arbitrability is a substantive gateway question rather than a procedural one.  We thus join the Sixth Circuit Court of Appeals [Reed Elsevier, 734 F.3d at 599] in holding that the availability of class arbitration is a "question of arbitrability."

Id. at 334-35.

As both the Sixth and Third Circuits have acknowledged, the Supreme Court's post-Bazzle decisions have gone beyond merely asserting that the "who decides" question remains unresolved.  Moreover, the plurality in Bazzle did not discuss the fundamental differences between bilateral and classwide arbitration later addressed by the Court in Stolt-Nielsen.  These differences, which the Fourth Circuit has considered in Bayer Cropscience, 645 F.3d at 275, form the foundation for the holdings in Reed Elsevier and Opalinski that the availability of class arbitration is a question of arbitrability.

In this Court's view, class arbitration raises numerous and significant issues that are of lesser concern in bilateral arbitration.  These include matters of due process with regard to absent parties, lack of procedural efficiency, heightened commercial stakes, and issues of confidentiality.  These concerns are too acute to be labeled merely "procedural."  Rather, the law

protects parties by presuming that a decision implicating such consequential matters should be litigated through the judicial process instead of through arbitration.    See Stolt-Nielsen, 559 U.S. at 685.

**B.**

Notwithstanding the presumption of judicial determination, the law permits a party to rebut that presumption by presenting evidence that the disputed agreement clearly and unmistakably contemplated that the issue of class arbitrability would be arbitrated.    See AT&T Technologies, 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").    The Defendants contend that the arbitration clause in the relevant leases clearly and unmistakably evinces the parties' intent to submit the question of class arbitration to an arbitrator.

The clause at issue provides that "[a]rbitration shall be the exclusive remedy and cover all disputes," and that "the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association." Importantly, the rules of the AAA include Supplementary Rules for

Class Arbitrations, which, in turn, provide that "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." Supp. R. 3. The Defendants urge that the sweeping language of the arbitration clause, and its incorporation of the AAA rules, provides clear and unmistakable evidence of the parties' intent to arbitrate the availability of class arbitration.

In Opalinski, 761 F.3d at 335, the arbitration clause provided for arbitration of "any dispute or claim arising out of or relating to [the plaintiffs'] employment." Like the arbitration clause in this case, however, it was silent with respect to class arbitration. Based on that silence, the Third Circuit concluded: "Nothing else in the agreements or record suggests that the parties agreed to submit questions of arbitrability to the arbitrator. Thus, the strong presumption favoring judicial resolution of questions of arbitrability is not undone, and the District Court had to decide whether the arbitration agreements permitted classwide arbitration." Id.

Similarly, in Reed Elsevier, 734 F.3d at 599, the arbitration clause provided that "any controversy, claim or counterclaim . . . arising out of or in connection with this Order . . ., will be

resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the [AAA]." In rejecting the argument that the language of the clause swept up class arbitration, the Sixth Circuit explained:

> This language does not clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration. Instead it does not mention classwide arbitration at all. It is true that the clause provides the "any controversy . . . arising out of or in connection with this Order" shall be resolved by binding arbitration; and one might argue that the question whether an arbitrator should decide classwide arbitrability is a "controversy . . . arising . . . in connection with" Crockett's order. . . . But given the total absence of any reference to classwide arbitration in this clause, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration. Thus, at best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts. Stolt-Nielsen, 559 U.S. at 684-85. We therefore agree with the district court that the question whether [the parties] agreed to arbitrate must "be decided by the court, not the arbitrator." AT&T Technologies, 475 U.S. at 649. . . . Crockett also responds that the agreement does not expressly exclude the possibility of classwide arbitration, which is true enough. But the agreement does not include it either, which is what the agreement needs to do in order for us to force that momentous consequence upon the parties here.

Id. at 599-600.

Notably, the Sixth Circuit also rejected the same argument the Defendants raise here concerning the arbitration clause's

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND**
**DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

incorporation of the AAA rules.  It explained that Supplementary Rule 3 instructs arbitrators not to consider the existence of the rules "to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." Id. at 599-600.

It is worth noting that, in the wake of Reed Elsevier and Opalinski, Chesapeake has filed complaints in two federal district courts in the Middle District of Pennsylvania seeking the same relief it seeks here.  See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, No. 4:14CV0620, 2014 WL 7335045 (M.D. Pa. Dec. 19, 2014); Chesapeake Appalachia, LLC v. Burkett, No. 3:13-3073, 2014 WL 5312829 (M.D. Pa. Oct. 17, 2014).  In Burkett, the district court agreed with the lessor-defendants that "it is not necessary for there to be an exact reference to or mention of the specific words 'class arbitrability' in order for the court to find that the parties agreed to have the arbitrators decide the issue of class arbitrability."  2014 WL 5312829 at *7.  Rather, the court was persuaded that "incorporation of the AAA rules into the lease . . . vested arbitrators with the authority in this case to decide

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.    1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

issues of arbitrability, including the issue of 'who decides' class arbitrability."[5]  Id. at *8.

The decision in Scout Petroleum, 2014 WL 7335045 at *12-13, wholly rejected that conclusion.  There, the district court observed that Burkett "completely ignore[d]" the fundamental differences between bilateral and classwide arbitration, and was based on "erroneous analysis."  Id.  It therefore declined to follow Burkett, stating it would not "take a contract that clearly and unmistakably provides for bilateral arbitration and the rules that will govern bilateral arbitration, and extrapolate that

---

[5] See also Price v. NCR Corp., 908 F. Supp. 2d 935, 945 (N.D. Ill. 2012) ("By adopting AAA Supplementary Rule 3 in their Agreement, the parties agreed that an arbitrator, and not this Court, would determine whether the Agreement authorizes class arbitration."); Bergman v. Spruce Peak Realty, LLC, No. 2:11CV127, 2011 WL 5523329, at *4 (D. Vt. Nov. 14, 2011) (referring the question of class arbitrability to the arbitrator because the parties' arbitration clause incorporated the AAA rules); S. Commc'ns Svcs., Inc. v. Thomas, 829 F. Supp. 2d 1324, 1337-38 (N.D. Ga. 2011) (finding that the parties' incorporation of the AAA Supplementary Rules for Class Arbitrations "gave the arbitrator the power to decide whether the Arbitration Clause implicitly authorized class proceedings"); Yahoo!, Inc. v. Iversen, 836 F. Supp. 2d 1007, 1012 (N.D. Cal. 2011) ("The Court agrees with Iversen that the incorporation by reference of the AAA Supplementary Rules . . . constitutes 'clear[] and unmistakabl[e]' agreement to have the arbitrator decide questions regarding the arbitrability of class-wide claims.").

evidence to 'clearly and unmistakably provide' for class arbitration."[6]  Id.

Arguably, Burkett misjudged the high hurdle presented by the "clear and unmistakable" standard crafted by the Supreme Court as a safeguard to ensure that lower courts do not "force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."  First Options, 514 U.S. at 945; AT&T Technologies, 475 U.S. at 649.  The Third Circuit has characterized that standard as "onerous," requiring "express contractual language."  Opalinski, 761 F.3d at 335.

Following a careful weighing of the matter, the Court is unpersuaded that the broad language of the arbitration clause in the subject leases, or even the reference to the AAA rules, clearly and unmistakably evinces the parties' intent to arbitrate the availability of classwide arbitration.  There is little doubt that

---

[6] See also Chassen v. Fidelity Nat'l Fin., Inc., No. 09-291, 2014 WL 202763, at *6 (D.N.J. Jan. 17, 2014) (internal quotation marks and citations omitted) ("The arbitration clauses are silent or ambiguous as to whether an arbitrator should determine the question of class-wide arbitrability; and that is not enough to wrest that decision from the courts.  In the opinion of this Court, there must be an actual showing of consent in order to refer a matter to class-wide arbitration."); Chico v. Hilton Worldwide, Inc., No. CV 14-5750, 2014 WL 5088240, at *11-12 (C.D. Cal. Oct. 7, 2014) (concluding that the court rather than the arbitrator should decide class arbitrability based on a lack of evidence in the contract that the parties agreed to arbitrate the issue).

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.     1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Chesapeake intended to arbitrate all disagreements with each individual "Lessor."  (Dkt. No. 36-5 at 6; Dkt. No. 36-6 at 4).  Nevertheless, the "who decides" question involves a putative class of "Lessors," a group never mentioned in the subject leases.  Thus, the sweeping language covering "all such disputes" and making arbitration the "exclusive remedy" has no bearing on the gateway matter concerning the availability of class arbitration.

The Defendants' argument concerning the AAA rules fares no better.  Undoubtedly, there is a benefit to identifying in a contract a set of rules to govern arbitrable disputes.  Here, the parties have identified the AAA rules.  Because those rules instruct arbitrators to decide the class arbitrability question, the Defendants maintain that Chesapeake agreed to submit the question to arbitration.  Under such a construction, however, parties could not agree that the AAA rules would govern only bilateral arbitration unless they specifically excluded the Supplementary Rules for Class Arbitrations.  This argument turns the presumption favoring judicial determination of classwide arbitrability on its head.  The entire point of the presumption is that an arbitration clause need not expressly exclude questions of arbitrability as outside its scope –- silence is simply the fact

25

CHESAPEAKE APPALACHIA, LLC, ET AL. v. SUPPA, ET AL.    1:14CV159

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

that triggers the presumption.    See Dockser, 433 F.3d at 427
(applying the same logic with respect to the presumption favoring
arbitration).

Finally, in the Court's view, the Supreme Court's recognition
of the fundamental differences between bilateral and class
arbitration is significant.   Based on those differences, the Court
prohibited decisionmakers from "presum[ing] . . . that the parties'
mere silence on the issue of class-action arbitration constitutes
consent to resolve their disputes in class proceedings."   Stolt-
Nielsen, 559 U.S. at 687.   It follows that the parties' silence on
the question of "who decides" class arbitrability should not be
read as implicitly consenting to submit the question to an
arbitrator.   The weighty consequences of class arbitration are no
less implicated by the "who decides" question than by the "is it
available" question.    Therefore, the Court concludes that
Chesapeake and the Defendants did not clearly and unmistakably
agree to arbitrate the issue of class arbitrability.

## IV.

For the reasons discussed, the Court concludes that it, not an
arbitrator, will decide whether the parties agreed to classwide
arbitration in the subject leases.    Accordingly, it **GRANTS**

26

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND**
**DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Chesapeake's motion for partial summary judgment, and **DENIES** the

Defendants' motion for partial summary judgment. Additionally, the

Court **SCHEDULES** a status conference for **April 27, 2015** at **3:30 p.m.**

to take up the matter of further proceedings in this case.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this

Memorandum Opinion and Order to counsel of record.

DATED: March 4, 2015.


                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE